WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rene Madera-Font,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>United States of America,<br><br>　　　　　Defendant. | No. CV-22-08225-PCT-GMS<br><br>**ORDER** |

Pending before the Court is Defendant's Motion to Dismiss Complaint Pursuant to Rule 12(b)(1) (Doc. 15). For the reasons detailed below, Defendant's Motion is denied.

**BACKGROUND**

In January 2019, Plaintiff Rene Madera-Font ("Plaintiff") began working as a physician with the Northern Arizona VA Health Care System in Prescott, Arizona. ("VA"). (Doc. 15 at 1; Doc. 16 at 2). Plaintiff's last day of work for the VA was approximately two years later, on January 20, 2021. (Doc. 16 at 2). Just prior to his departure, the VA offered an Annual Employee Wellness Laboratory Testing program in which voluntary employee participants would be screened annually using certain tests, including a prostate specific antigen test ("PAS"). (Doc. 15 at 2; Doc. 15-1 at 2). On January 14, 2021, Plaintiff volunteered to participate in the program. (Doc. 15 at 2). On January 19, 2021,[1] a day

---

[1] Although both parties identify the blood draw as having occurred on the 19th, some claim forms seem to suggest that the blood draw occurred on the 18th. Whether the draw occurred on the 18th or the 19th is a factual question but regardless of which of these two dates is correct, it does not change the Court's analysis on a motion to dismiss.

before he separated from his VA employment, Plaintiff participated in testing, including the PAS. (Doc. 15 at 2; Doc. 16 at 3). He was not provided the results of his blood test until he asked for them after receiving the results of a second PAS taken approximately five and a half months later. (Doc. 1 at 3). The PAS results of that second test were "alarming" because they showed a rate of 25.8 ng/ml of blood—which became 31.6 ng/ml by July. (*Id.*; Doc. 16 at 13).[2] Plaintiff began treatment for prostate cancer immediately thereafter. (Docs. 1 at 3; 16 at 13-14). He also went to the VA to obtain his previous blood test results. (Doc. 1 at 3). The results showed a rate of 16.9 ng/ml of blood, (*Id.* at 3; Doc. 16 at 14), which is also highly elevated. Yet the results of the January 19 test, if timely communicated, would have allowed Plaintiff treatment options that were foreclosed by the delay in diagnosis and treatment. This delay, he claims, has negatively and severely reduced his likelihood of survival from that cancer.

Thereafter, on November 30, 2021, Plaintiff filed with the VA Standard Form 95, *Claim for Damage, Injury, or Death.* (Doc. 1 at 1–2; Doc. 16 at 21). The form serves to present an FTCA claim to the VA. In that form, Plaintiff alleged that the VA had failed to inform the Plaintiff about his elevated PSA score, failed to refer Dr. Madera-Front to urology to rule out prostate cancer, and failed to timely diagnose and treat prostate cancer. (Doc. 16 at 23). Plaintiff alleged that "test results obtained during his VA employee health testing [] were not, allegedly, timely provided to him, and the delay allegedly caused an 'advanced prostate cancer' diagnosis." (Doc. 15 at 2). Months after filing his Form 95, however, the VA advised the Plaintiff that "[o]ur review of the claims indicates that Dr. Maderfront's (sic) injury occurred during the course of his government employment since he received the PSA testing in question as part of the VA employee health promotion program." (Doc. 16 at 23). It further advised Plaintiff that

> [FECA] provides the exclusive remedy for work-related injuries of Federal employees. Although it appears that FECA would apply in this case to bar any tort claim, . . . [the OWCP],

---

[2] Plaintiff submits that a rate between 4 and 10 ng/ml of blood indicates cancer, with results higher that 10 ng/ml indicating prostate malignancy. (Doc. 16 at 3).

- 2 -

> as designee of the Secretary of Labor, has the exclusive authority to determine whether an injury is covered by FECA. . . . Accordingly, your clients should file a FECA claim with OWCP in order to determine whether the alleged injury is within its exclusive jurisdiction. This office will hold your clients' FTCA claim in abeyance until such time as we are provided with a copy of the Secretary of Labor's decision regarding the FECA claim.

(*Id.*)

Accordingly, in March 2022, Plaintiff filed a Federal Employees' Compensation Act ("FECA") claim alleging the VA's failure to notify him about his test results constituted an injury because "[t]he survival rate for Plaintiff went from 95% as of January 19, 2021, to 20% as of July 1, 2021." (Doc. 1 at 3). On June 2, 2022, the United States Department of Labor, Office of Workers' Compensation Programs ("OWCP") denied Plaintiff's FECA claim because "the medical evidence does not demonstrate that the claimed medical condition is related to the established work-related event(s) as required for coverage under the [FECA]." (Doc. 15-2 at 9). The decision went on to explain:

> Specifically, your case is denied because the evidence is not sufficient to establish that the medical condition is causally related to the accepted work event(s). The reason for this finding is that the evidence of record at this time, including your physician's most recent report dated 05/19/2022, is insufficient to support that the diagnosed prostate cancer medical condition is causally related to the accepted work factor of 01/18/2021. There was no discussion of the mechanism of injury or other explanation as to the relationship between a diagnosed prostate cancer condition and the 01/18/21 work factor. In contrary, the medical report dated 05/19/2022 from Dr. Amar U. Kishah, MD, Chief Genitourinary Oncology Service opined that the diagnosed prostate cancer condition is "not in any way secondary to occupation exposure or trauma."

(Doc. 15-2 at 11).

On December 12, 2022, Plaintiff filed a Federal Torts Act Claim ("FTCA") in this

1  Court. In the claim, Plaintiff alleged that "Defendant failed to communicate abnormal lab
2  results to Dr. Madera-Font in a timely manner and breached the duty of patient care." (Doc.
3  1 at 5). On April 3, 2023, the United States of America ("Defendant") moved to dismiss
4  Plaintiff's complaint for lack of subject matter jurisdiction under Federal Rule of Civil
5  Procedure 12(b)(1).

## DISCUSSION

Defendant's sole ground for dismissal for lack of subject matter jurisdiction is that Plaintiff's claim is a colorable FECA claim and, thus, only the Department of Labor holds jurisdiction over it. The question before the Court is thus: whether Plaintiff's claim for damages allegedly resulting from the VA providing delayed test results from Plaintiff's participation in an employee wellness program was colorably asserted as within the scope of FECA when he was no longer employed by the VA during the alleged delay. For the reasons detailed below, it was not.

> FECA claims raise two questions: (1) is the injury within the scope of FECA, and (2) is the plaintiff entitled to compensation under the facts of her case. The latter question, if raised, must be deferred to, and answered by, the Secretary of Labor. Scope, on the other hand, is a question that must be answered by the federal courts, because it is one of jurisdiction. If a plaintiff has a colorable claim under FECA, the federal courts should dismiss any action arising under the same facts for lack of subject matter jurisdiction.

*Moe v. U.S.*, 326 F. 3d 1065, 1068 (9th Cir. 2003). Injuries must have a physical component; purely emotional damages are not sufficient for a colorable FECA claim. *Id.* at 1068–69 (holding Plaintiff's injury was colorable under FECA where Plaintiff witnessed a mass shooting at work and suffered post-traumatic stress syndrome, which exacerbated Plaintiff's colitis condition).

Of course, FECA is not all encompassing; it covers injuries at work, much like a worker's compensation statute. *See Hawkins v. U.S.*, 14 F.4th 1018, 1019–20 (9th Cir. 2021); *Lockheed Aircraft Corp. v. U.S.*, 460 U.S. 190, 194 (1983) ("Congress adopted the

principal compromise—the 'quid pro quo'—commonly found in workers' compensation legislation . . . ."). Injuries wholly unrelated to a federal worker's employment—say a USPS truck hitting a DEA agent on a day off—would, thus, not be a colorable FECA claim. Federal employment then, while necessary for a FECA claim, is not dispositive of FECA's scope. Instead, determining where FECA's exclusive reign ends—and the FTCA's begins—requires an analysis of the injury.

Plaintiff's alleged injury was not colorable under FECA, and as such is not subject to FECA's exclusive jurisdiction. Plaintiff alleges injury based on the VA's failure to report the result of his PAS. Plaintiff was a VA employee when the VA administered a PAS through its voluntary wellness program.[3] But, Plaintiff did not suffer, nor does he allege that he suffered his alleged injury during the administration of the January 19 test. Rather, Plaintiff's alleged injury was a result of the failure to report his test results, a failure which, if it exists, arose only after his employment ended. Plaintiff's blood draw was on January 19, and his employment ended on January 20. In his complaint he alleges that "[t]he conveyance to the patient or employee of the findings of a PSA of 16.9 after 48 hours of the laboratory findings . . . is below the applicable standard of care." (Doc. 1 at 5). Since the blood was drawn on the 19th, the lab results could not have been completed earlier than that date, and practically would not have been completed until several days thereafter. By two days after the laboratory findings, however, the earliest date at which Plaintiff alleges the Defendant's negligent delay began, Plaintiff was no longer employed with the VA. Any failure to timely deliver his blood test results, and the resulting damage, inevitably arose after his employment terminated, and thus does not result in a work-related claim over which FECA has jurisdiction.

Plaintiff's complaint reports that from when the delay first arose his PSA numbers

---

[3] Plaintiff mistakenly believes that definitions of "work-relatedness"—including the applicability of voluntary participation in a wellness program—under 29 C.F.R. § 1904.5 apply in this case. (Doc. 16 at 8–9). Those regulations, however, define work-relatedness under Occupational Safety and Health Administration ("OSHA") claims, not FECA claims. The U.S. Government does not qualify as an employer under OSHA. 29 U.S.C. § 652(5).

increased from 16.9 ng/mL to 31 ng/mL. (Doc. 1 at 3). This increase accompanied a decrease in Plaintiff's survival rate from 95% to 20%. (*Id.*). This injury—as opposed to the test itself—occurred when Plaintiff was no longer employed by the VA, thus taking it out of the confines of FECA. While an injury caused by the administration of the test itself may well have been within FECA's exclusive jurisdiction, Plaintiff clearly asserts an injury caused in the VA's failure to report, which occurred only after his employment ended.

The OWCP's Notice of Decision underscores this distinction. There, the OWCP explained that Plaintiff's condition was not "related to the established work-related event(s) as required for coverage under [FECA]." (Doc. 16 at 39). It further specifies that there was no link between the alleged injury ("failure to communicate critical blood test results") and the work related event (the administration of the test). (Doc. 16 at 39–41). Defendant asserts that the FECA's June 2, 2022, decision based on the lack of relation of the subject of the claim to any work event actually demonstrates that OWCP accepted jurisdiction and denied his claim. Correctly read, however, the decision determines that the OWCP has no jurisdiction over the claim. It is possible that the OWCP misread Defendant's claim as stating that the delay caused Plaintiff's prostate cancer, as opposed to exacerbating it. But that is not a material difference. To the extent the OWCP's decision is read as Defendant suggests it should be, it would be a decision beyond the OWCP's scope.

Plaintiff's initial FTCA claim—which, notably, was proper—was put on hold by the government until, at the government's direction, Plaintiff filed a FECA claim. (Doc. 16 at 23). Rather than seeking to prevent Plaintiff from having a second bite at the apple, the government's present motion to dismiss based on a meritless reading of the OWCP's dismissal of his FECA claim, is an attempt to deny Plaintiff any bite at all. This attempt fails as a matter of law. (Doc. 15 at 3). Plaintiff had only one colorable claim and it is under the FTCA, not the FECA. It is for that reason that the OWCP denied Plaintiff's FECA claim: because Plaintiff's injury was not a colorable FECA claim.

/ / /

Because Plaintiff's claim is not within the scope of FECA, FECA's exclusivity does not apply. Accordingly, this court has subject matter jurisdiction over Plaintiff's FTCA claim.

## CONCLUSION

Accordingly,

**IT IS THEREFORE ORDERED** Defendant's Motion to Dismiss Complaint Pursuant to Rule 12(b)(1) (Doc. 15) is **DENIED**.

Dated this 20th day of March, 2024.

_G. Murray Snow_
G. Murray Snow
Chief United States District Judge